NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------------X
ALEX ABDALLA, SR.,                          :
                                            :
        Petitioner,                 :
                                            :    Civil Action No. 03-477 (JAG)
        v.                          :
                                            :            **OPINION**
TERRENCE MOORE,                             :
SUPERINTENDENT OF RAHWAY                    :
STATE PRISON AND THE ATTORNEY               :
GENERAL OF THE STATE OF                     :
NEW JERSEY,                                 :
                                            :
                                            :
        Respondent.                 :
---------------------------------------------------------X

**GREENAWAY, JR., DISTRICT JUDGE**

      Alex Abdalla, Sr. ("Petitioner" or "Abdalla, Sr."), a state prisoner confined at East Jersey State Prison in Rahway, New Jersey, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a) ("Petition"), claiming Petitioner was denied effective assistance of counsel because his attorney failed to investigate adequately, failed to move for a severance, and failed to object to prejudicial testimony. The State filed an answer arguing that the Petition is time-barred. As set forth below, this Court concludes that Petitioner's application is time-barred by the one-year period of limitation prescribed in 28 U.S.C. § 2254(d)(1). Consequently, this Court shall dismiss the Petition and decline to issue a certificate of appealability. See 28 U.S.C. §§

1

2254(d)(1), 2253(c)(2).

**I. FACTUAL BACKGROUND**

In December 1989, Alex Abdalla, Sr., along with co-defendant Juan Rosado, were convicted by a jury for the murder of Mario Santos. New Jersey v. Abdalla, No. A-4543-96T2, slip op. at 2 (N.J. Super. Ct. App. Div. June 4, 1998) ("App. Div. Op. 1998"). Alex Abdalla, Jr. accepted a plea agreement prior to trial. (Id.) At trial, the State of New Jersey presented several eyewitnesses that placed Abdalla, Sr., Abdalla, Jr. and Rosado, as well as the victim, at the scene of the crime. (Id.) These witnesses testified that a two-part altercation began after Abdalla, Sr. confronted Santos and asked him to turn down the radio. (Id.) The fight began as a "verbal confrontation" between Abdalla, Sr. and Santos and escalated into a full-fledged street fight when Abdalla, Jr. and Rosado joined the dispute. (Id.) After a further exchange of blows, Santos ran away. (Id.) A short time later, a second fight occurred. (Id.) This second fight was initiated by Abdalla, Jr. and Rosado, but Abdalla, Sr. soon joined in, hitting Santos with a "metal exercise device." (Id. at 3.) According to the witnesses, Abdalla, Sr. yelled "matalo" (kill him) several times. (Id.) At some point during the second fight, Santos tried to flee from the scene but the three men continued to kick him and punch him in the head, even after Santos lay motionless on the ground. (Id.) Abdalla, Sr.'s defense counsel introduced four witnesses who testified as to Abdalla, Sr.'s limited involvement in the fight. (Id.) Moreover, a witness for the State, George Maldonado, testified that he personally tried to break up the fight, but in the end it was Abdalla, Sr. who commanded the boys to stop fighting; the three men left the scene leaving Santos laying on the ground. (Id.)

Abdalla, Sr. did not testify in his defense. (Id.) A unanimous jury convicted both

Abdalla, Sr. and Rosado of first degree murder. (Id.) Abdalla, Sr. was sentenced to thirty years without parole. (Id.)

## I. PROCEDURAL HISTORY

On December 21, 1989, following a jury trial, the New Jersey Superior Court, Law Division entered a judgment of conviction against Petitioner for the first degree murder of Mario Santos and a related weapons charge. (J. of Conviction and Order for Commitment 1.) Petitioner appealed the conviction to the Superior Court of New Jersey, Appellate Division, raising claims of ineffective assistance of counsel; his conviction and sentence were affirmed by the Superior Court of New Jersey, Appellate Division on February 26, 1993. (App. Div. Op. 1998 at 3).

On or about March 25, 1993, Petitioner filed for certification to the New Jersey Supreme Court (id. at 1); his application was denied on May 11, 1993. (Order dated May 11, 1993.) Petitioner did not apply for a writ of certiorari to the Supreme Court of the United States. (Pet. for Writ of Habeas Corpus 2.)

On or about December 22, 1994,[1] Petitioner sought post-conviction relief ("PCR") raising five grounds for relief, including a claim of ineffective assistance of trial and appellate counsel.[2] (App. Div. Op. 1998 at 5.) Petitioner's PCR application was denied on August 14,

---

[1] Petitioner's initial petition for post-conviction relief, raising only three grounds of error, was filed on December 22, 1994. (App. Div. Op. 1998 at 5-6). Petitioner moved to amend his petition for post-conviction relief. (Id.) This motion was dated on December 7, 1994, but was not filed until June 16, 1995. (Id.) Petitioner's Pro Se Supplemental Brief was received on June 16, 1995 and contained four points of contention including two that were already listed in the initial petition for post-conviction relief. (Id.)

[2] Petitioner also claimed: (1) the trial court erred by not instructing the jury on causation within the murder charge (App. Div. Op. 1998); (2) the trial court erred in its instruction to the

3

1995. (Tr. of PCR Mot. 20.) On June 30, 1995, in the Superior Court, Petitioner filed a motion for a new trial based on newly discovered evidence.[3] (Id.) This motion was also denied on August 14, 1995. (Id. at 21.) Petitioner then sought a nunc pro tunc motion for reconsideration on or about June 24, 1996. (Nunc Pro Tunc Mot. dated June 24, 1996.) This motion was denied on March 4, 1997. (Order dated March 4, 1997.) Petitioner subsequently appealed the order denying him post-conviction relief on or about July 30, 1997.[4] (App. Div. Op. 1998.) On June 4, 1998, the Superior Court of New Jersey, Appellate Division affirmed the conviction.[5] (Id.) On or about September 10, 1998, Petitioner once again sought certification from the Supreme Court of New Jersey claiming he was denied his federal and state constitutional rights to due process, a fair trial, and effective assistance of counsel because the trial court dismissed Petitioner's motion

---

jury regarding accomplice liability (id.); (3) the plea bargain between the state and Alex Abdalla, Jr. violated the rights of Abdalla, Sr. because Abdalla, Jr. was precluded from testifying on his father's behalf (id.); and (4) a key witness for the state testified in a way that was prejudicial to the petitioner. (id.)

[3] Petitioner contends he received several affidavits after his conviction that would exonerate him by establishing his limited involvement in the activities leading to the death of Mario Santos. (Tr. of PCR Hr'g dated Mar. 4, 1997.) Petitioner admits he received these affidavits sometime between 1989 and 1991. (Id. at 7-11.)

[4] According to the Appellate Division, the state trial court judge considered this motion as a second application for post-conviction relief. (App. Div. Op. 1998 at 8.)

[5] Rejecting defendant's claim for ineffective assistance of counsel, the appellate court affirmed its earlier decision reached on direct appeal. (Id. at 8.) The appellate court reasoned that the "new" evidence that defendant has had in his possession for "years" was merely cumulative. (Id.) The appellate court also reiterated its belief that defense counsel provided a "vigorous, viable defense." (Id.) The court described the attorney as "an experienced certified criminal trial attorney" who "was conscientious and zealous in the representation of this defendant." (Id.) This is evidenced by the record which is "replete with objections, arguments and motions made by trial counsel on defendant's behalf." (Id.) The court further noted that the "trial counsel was prepared and had a thorough grasp on the facts and legal issues." (Id.)

for a new trial without holding an evidentiary hearing; however, the Supreme Court of New Jersey denied certification on November 2, 1998. (Id.)

On November 4, 1999, Petitioner, represented by counsel, filed the first of three petitions seeking a writ of habeas corpus in the United States District Court. The Petition sought eight grounds for relief, including: (1) a new trial should be held as a result of newly discovered evidence; (2) the trial court erred in allowing evidence that was not properly admitted into trial under proper discovery rules; [6] (3) the trial court erred in limiting cross-examination; (4) Petitioner was denied effective assistance of counsel; (5) the trial court erred in its instruction on accomplice liability; (6) the trial court erred in its instruction on causation in the murder charge; (7) the plea bargain between the State and Alex Abdalla, Jr. was unconstitutional; and (8) one of the state's key witness's testimony was inflammatory and prejudiced petitioner's right to a fair trial. Abdalla v. Moore, No. 99-5190, slip op. (D.N.J. Aug. 17, 2000).

Judge Nicholas Politan dismissed the petition because it was a "mixed" petition consisting of both exhausted and unexhausted claims and because Petitioner failed to exhaust his claims fully in state court before applying for federal relief. (Id.) Judge Politan specifically noted that Petitioner failed to exhaust claims five through eight. (Id. at 7.) Additionally, Judge Politan refused to grant a certificate of appealability because he did not reach the substantive issues in the case. (Id.) This first petition was dismissed on August 17, 2000. (Order dated Aug 17, 2000.) It appears from the record that Petitioner did not attempt to exhaust his unexhausted claims in the state courts, nor did Petitioner request a stay in his federal habeas corpus case.

---

[6] It appears to this Court that the "discovery rules" identified by the petitioner are mislabeled and should have instead been labeled "evidentiary rules."

On August 15, 2001, Petitioner filed a second petition seeking a writ of habeas corpus. This time he raised only four grounds for relief, including: (1) trial counsel was ineffective for failing to move for severance; (2) trial counsel was ineffective for failing to object to certain testimony; (3) trial counsel was ineffective for failing to call Petitioner to testify on his own behalf; and (4) trial counsel was ineffective because he failed to investigate properly or spend enough time with Petitioner preparing for trial. Abdalla v. Moore, No. 01-3897 slip op. (D.N.J. Feb. 5, 2002).

On February 5, 2002, Judge Faith Hochberg dismissed the writ of habeas corpus application without prejudice for failure to exhaust state court relief with respect to grounds (3) and (4) and ordered that no certificate of appealability be issued. (Id.) With respect to the fourth ground, Judge Hochberg noted that Petitioner had never previously raised the claim of ineffective counsel for failure to consider two out of the seven affidavits that Petitioner presently requested the court to review. (Id.) In a footnote, Judge Hochberg warned Petitioner that he had two options in pursuing relief: present the unexhausted claims to the state courts or "refil[e] a federal habeas petition containing only previously exhausted claims, albeit this course might mean that any claims exhausted thereafter might be barred from federal habeas review in a successive petition." (Id.) (citing Rose v. Lundy, 455 U.S. 509, 520-21). The record establishes that Petitioner did not return to state court to exhaust his unexhausted claims, nor did he request a stay on his federal habeas corpus case.

On February 4, 2003, Petitioner submitted to this Court a third application seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the following grounds: (1) ineffective assistance of counsel for failing to investigate adequately clearly relevant and exculpatory

6

material that was readily available, including affidavits from five witnesses; (2) ineffective assistance of counsel for failure to call for a severance; and (3) ineffective assistance of counsel for failure to object to highly prejudicial testimony.  (Pet. at 5- 12.)  Additionally, Petitioner contends that even if there is a procedural defect with his petition, this Court should nonetheless consider the merits of this case under the "actual innocence" doctrine.[7]  (Id.)

## III. DISCUSSION

Before being able to reach the substantive claims of any petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254, this Court must determine whether the petitioner exhausted the available state court remedies and whether the petition is time-barred.  28 U.S.C. § 2254(b); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir 1997).

### A. Exhaustion

"[A] federal habeas court may not grant a petition for a writ of habeas corpus filed by a person incarcerated from a judgment of a state court unless the petitioner has first exhausted the remedies available in the state courts."  Lambert, 134 F.3d at 513.  See also  Toulson v. Beyer, 987 F.2d 984 (3d Cir. 1993).  Absent an express waiver by the State, § 2254 "imposes a duty on the courts to examine the exhaustion issue."  Lambert, 134 F.3d at 515.  A petitioner will not be deemed to have exhausted the available state court remedies so long as he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  Therefore, a petitioner in the custody of the State of New Jersey exhausts his claims by fairly presenting them to the Law Division of the Superior Court, the Appellate Division of the

---

[7] The actual innocence doctrine allows a habeas court to review the merits of a procedurally barred habeas petition.  Schlup v. Delo Corr. Center, 513 U.S. 298 (1995).

Superior Court, and in a petition for certification filed in the Supreme Court of New Jersey. Toulson, 987 F.2d at 987-989.  See also O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Castille v. People,  489 U.S. 346, 350 (1989).  However, a petitioner who has raised an issue on direct appeal is not required to raise it again in a state post-conviction proceeding.  Lambert, 134 F.3d at 513.

After having his Petition dismissed by the district court twice before as a "mixed" petition, Petitioner's present application for habeas corpus advances only three grounds for relief:

>  (1) ineffective assistance of trial counsel for failure to fully investigate available exculpatory witness testimony from five eye - witnesses;

> (2) ineffective assistance of trial counsel for failure to call for a severance; and

> (3) ineffective assistance of trial counsel for failure to make any objection to a highly inflammatory and prejudicial statement made by a prosecution witness while testifying in court.

Petitioner contends that these grounds for relief have been fully exhausted in the state courts.[8] However, the State maintains that this Petition is still a "mixed" petition because Petitioner has failed to fully exhaust the claim that "counsel was ineffective for failing to make a motion for severance," claiming that this issue was only raised in a footnote in an appeal from post-conviction relief.  Therefore, the State argues, this petition must be dismissed.  After a careful examination of the record, it is clear that Petitioner has fully exhausted those claims advanced in

---

[8] Although it appears from the record that Petitioner did not attempt to return to State court at any point after filing his first application for federal habeas relief, Petitioner has twice modified and eliminated those claims that the district courts have found were unexhausted.

this present petition. However, these claims, while exhausted, are time-barred.[9]

## B. Statute of Limitations and Tolling

Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996), amended 28 U.S.C. § 2254, and imposed a one-year statute of limitations for the filing of a federal habeas petition by a state prisoner. 28 U.S.C. §2244 (d)(1); Strokes v. Dist. Attorney of County of Philadelphia, 247 F.3d 539, 541 (3d.Cir. 2001), cert denied, 524 U.S. 959 (2001). As 28 U.S.C. § 2244(d)(1) provides, the one-year limitation period begins to run from the latest of:

> (a) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[9] While district courts have the discretion to stay mixed habeas corpus petitions, these stays are generally not issued retroactively. Rhines v. Weber, 544 U.S. 269 (2005) (holding district courts have the discretion to grant a stay and abeyance for mixed petitions); Crews v. Horn, 360 F.3d 146, 154 (3d Cir. 2004) (holding that "district courts have the discretion to stay mixed habeas corpus petitions but that . . . when outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action."); Fugah v. Mazurkiewicz, No. Civ. A. 96-7272, 2005 WL 984203 (E.D.Pa. Apr. 27, 2005) (noting that some courts have been willing to grant retroactive stays under Fed. R. Civ. P. 60(b) or the doctrine of equitable tolling). "However, courts applying either theory have uniformly required that the petitioners diligently pursue their unexhausted claims in state court and promptly return to federal court." Fugah, at *4. The Fugah court noted that those courts that granted retroactive stays arose only in the Second Circuit, a jurisdiction that tolled AEDPA's statute of limitation during the pendency of a federal habeas petition prior to the 2001 Supreme Court decision in Duncan v. Walker, 533 U.S. 167 (2001), holding the contrary. The Fugah court reasoned that granting a retroactive stay in those cases was justified because of the petitioners' reliance on tolling federal habeas petitions. In the present case, granting a retroactive stay would be inappropriate and unjustified. Petitioner has failed to demonstrate that equitable tolling is appropriate and has not made a Rule 60(b) motion. Additionally, unlike the Second Circuit, the Third Circuit did not toll the statute of limitations during the pendency of a federal habeas corpus petition. Fugah at *4. Therefore, there is no basis for granting a retroactive stay.

9

>(b) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(c) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(d) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The statute of limitations for filing a §2254 petition is tolled during the time period that a state prisoner attempts to exhaust his claims in state court. 28 U.S.C. §2244(d)(2).  Under §2244(d)(1)(A), a state criminal judgment becomes final and the limitations period begins to run "at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires."  Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999) (citing Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999)).  However, unlike the statutory tolling of a properly filed application for state post-conviction or other collateral review, "the filing of a petition for habeas corpus in federal court does not toll the statute of limitations."  Rhines v. Weber, 544 U.S. 269, 275 (2005); Duncan v. Walker, 533 U.S. 167 (2001); Jones, 195 F.3d at 153 (3d Cir. 1999).

In addition to statutory tolling, the one-year AEDPA limitations period is subject to equitable tolling.  Miller v. N.J. State Dep't of Corrections, 145 F.3d 616, 618 (3d Cir. 1998). "Generally a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DeGuglielmo, 544 U.S. 408, 418 (2005).  Equitable tolling is only

10

appropriate when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005). Mere excusable neglect is not sufficient. Id.

As noted above, Petitioner was sentenced in December 1989. Petitioner filed a timely appeal to the Superior Court of New Jersey Appellate Division, which affirmed the trial court's decision in February of 1993, and the Supreme Court of New Jersey denied certification on May 11, 1993. Petitioner then had 90 days in which to file a petition for a writ of certiorari to the Supreme Court of the United States. Petitioner did not file a writ of certiorari to the Supreme Court of the United States; therefore, his avenue of direct appeal of his conviction came to an end 90 days later. Given these facts, and since Petitioner's route of direct appeal ended before the effective date of AEDPA on April 24, 1996, Petitioner's application for writ of habeas corpus had to be filed with the clerk of this court by April 24, 1997 in order to be timely under § 2244(d), unless the limitations period was statutorily and/or equitably tolled. See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998) (finding there would be a one-year grace period following the effective date of AEDPA in which to file a petition for habeas corpus relief in cases in which a prisoner's conviction had become final before April 24, 1996).

In the instant case, the limitations period began running on this pre-AEDPA conviction at the beginning of the one-year grace period on April 24, 1996. See Burns, 134 F.3d at 161. However, prior to this date, Petitioner effectively tolled the statute of limitations by seeking post-

11

conviction relief. Petitioner twice sought post-conviction relief in the New Jersey courts; these applications were dismissed as of August 14, 1995. Petitioner then appealed the order denying him post-conviction relief, this order was affirmed by the Superior Court of New Jersey Appellate Division on June 4, 1998, and the New Jersey Supreme Court once again denied certification on November 5, 1998.[10] Thus, under §2244(d)(2) the limitations period was statutorily tolled until November 5, 1998. Petitioner then had one year to seek federal habeas relief. Petitioner then filed three petitions of habeas corpus on November 4, 1999, August 15, 2001, and February 4, 2003. The first two petitions were dismissed without prejudice as "mixed petitions," pursuant to Rose v. Lundy. 455 U.S. 509, 514 (1982) ("[A] mixed petition contain[s] both exhausted and unexhausted claims.")[11] The third petition, presently under review by this Court, must be dismissed as time-barred under AEDPA, as it was submitted more than four years after Petitioner's direct appeal became final and post-conviction proceedings were concluded in state court on November 5, 1998, and more than three years after the statute of limitations period ended.

     Furthermore, Petitioner has not requested, nor do the facts of this case suggest, that AEDPA's statute of limitations should be equitably tolled. There is no evidence that Petitioner, who has been represented by counsel throughout the entire course of his proceedings, has been "pursuing his rights diligently." Petitioner did not return to state court in order to exhaust his unexhausted claims. Petitioner waited a year after each prior decision before filing revised

---

[10] The order denying Petitioner's certification was dated November 2, 1998 but was filed on November 5, 1998.

[11] It appears to this Court that the second petition for writ of habeas corpus could have been dismissed as time-barred under AEDPA as well.

petitions. Petitioner did not request a stay and abeyance from the District Court after his second petition was dismissed, even though Judge Hochberg warned Petitioner about the possibility of his claims becoming time-barred. Moreover, this Court cannot discern the existence of some "extraordinary circumstance that warrants equitable tolling." This Petition for writ of habeas corpus must be dismissed as time-barred.

**C. Ineffective Assistance of Counsel**

Even if Petitioner's claims were not procedurally barred, Petitioner's application for a writ of habeas corpus would still be denied. A district court will consider a petition for a writ of habeas corpus filed by an individual "in custody pursuant to the judgment of a State court only on the grounds that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. 362, 375 (2000); Weeks v. Angelone, 528 U.S. 225, 237 (2000). Federal habeas relief may not be granted for claims heard on the merits at the state level unless that previous adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d); Williams, 529 U.S. at 362. A state court decision is "contrary to" Supreme Court precedent, if the state reached "a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decide[d] a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." Marshall v. Cathel, 428 F.3d 452, 462 (3d Cir. 2005) (citing Williams v. Taylor, 529 U.S. at 413). An "unreasonable application" occurs where "the state court identifies the correct governing legal principles from the [Supreme] Court's decisions but unreasonably applies the principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

13

Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-410.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decision as of the time of the relevant state-court decisions." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).

The applicable "clearly established" federal law for ineffective assistance of counsel claims is derived from Strickland v. Washington, 466 U.S. 668, 687 (1984). To have a successful claim for ineffective assistance of counsel, the petitioner must satisfy a two-part test: petitioner must show that counsel was deficient, and that this deficiency prejudiced the petitioner. Id. at 688.[12] Additionally, "judicial scrutiny of counsel's performance must be highly deferential" because of the relative ease of "a defendant to second-guess counsel's assistance after conviction" or "a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish counsel's deficient performance, the petitioner must prove that counsel's representation "fell below an objective standard for reasonableness." Id. "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

---

[12] A court need not analyze an ineffective assistance of counsel claim in this order. Strickland, 466 U.S. at 697. In Strickland, the Supreme Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Id.

14

guaranteed to the defendant by the Sixth Amendment." Id. at 687.

The Supreme Court has not "articulate[d] specific guidelines" for evaluating counsel's representation but instead emphasized that "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Wiggins, 539 U.S. at 521 (citing Strickland, 466 U.S. at 668). The range of reasonable professional judgments is wide and courts must take care to avoid illegitimate second-guessing of counsel's strategic decisions from the superior vantage point of hindsight. Strickland, 466 U.S. at 689. Additionally, strategic decisions are accorded special deference. Id. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Wiggins, 539 U.S. at 521 (citing Strickland, 466 U.S. at 690-91).

To establish prejudice, the petitioner must prove that "counsel's errors were so serious as to deprive the defendant of a fair trial" or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693. The reviewing court should look at the "totality of the circumstances" because even if the court finds that there were errors, "some of the factual findings will have been unaffected by errors, and factual findings that were affected will have been affected in different ways." Id. at 695.

In the present case, the state court identified the correct legal standard, Strickland v. Washington, for analyzing a claim for ineffective assistance of counsel. Therefore, the determinative issue is whether the state court "unreasonably applied" this legal standard to the

petitioner's claims when it denied Petitioner's post-conviction relief.  The ineffective assistance of counsel claims that Petitioner raises before this Court –  failure to investigate adequately, failure to move for a severance, and failure to object to prejudicial testimony – have all been raised and analyzed by the state courts during post-conviction review.

**Failure to investigate adequately**

The Appellate Division rejected the claim of ineffective assistance of counsel for failing to investigate adequately, reasoning that "at best, the suggested evidence is cumulative" and that nothing was "presented that suggests that the second prong of Strickland would be met with any further effort by defense counsel."  (App. Div. Op. 1998.)  The Appellate Division noted that at trial "there was testimony presented that [petitioner's] purpose at the fight was to stop his son and Rosado from fighting [and] the jury rejected defendant's theory."  Id.

Factual determinations, such as those presented by the Appellate Division, "are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in state court and based on factual determinations will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The Appellate Division's factual determinations are not objectively unreasonable, and Petitioner has not presented evidence to the contrary.  Petitioner claims that his trial counsel failed to investigate exculpatory evidence adequately.  Specifically, he asserts that four affidavits from eyewitnesses, and one affidavit from a prisoner, would have exonerated him.  However, these affidavits, even if accepted as true and reliable, merely state that Abdalla, Sr. ultimately broke up the fight – a contention that was already made at trial.

Additionally, the Appellate Division described trial counsel as "an experienced certified criminal trial attorney . . . conscientious and zealous in [his] representation of this defendant." The court further noted that

> the record is replete with objections, arguments and motions made by trial counsel on defendant's behalf. Trial counsel was prepared and had a thorough grasp of the facts and the legal issues. The record does not support or even give rise to a fair inference that trial counsel's performance was in any way inadequate or below a level of reasonable competence.

State v. Abdalla, No. A- 3811-89T3 slip op. (App. Div. Feb 26, 1993)("App. Div. Op. 1993"). It appears to this court that the Appellate Division's characterization of trial counsel as a qualified attorney, and its factual determination that the affidavits are "merely cumulative," are objectively reasonable.

Additionally, even if this Court were to characterize trial counsel's conduct as unreasonable, which it will not, Petitioner has not demonstrated that counsel's alleged errors prejudiced him or in any way deprived him of a fair trial. As noted above, these affidavits, which Petitioner relies on, are merely cumulative of the evidence that was presented at trial, and cannot meet the standard of showing that a different outcome would have occurred at trial. Therefore, Petitioner's claim for ineffective assistance of counsel for failing to adequately investigate would have been denied, if this Court were required to reach it.

**Failure to move for severance and object to testimony**

During his PCR review, Petitioner presented his claims for ineffective assistance of counsel for failure to move for severance of defendant's trial from that of co-defendant Rosado and failure to object to "highly prejudicial testimony;" however, the Appellate Division found

17

that these issues were fully resolved on direct appeal and affirmed the decision.  (App. Div. Op. 1993.)  Analyzing this question under Strickland, the Appellate Division found that these claims were without merit because Petitioner failed to establish that trial counsel's performance was unreasonable or deficient.  The Appellate Division reasoned that counsel's actions, including failure to move for severance or object to testimony, were tactical decisions and "strategically defensible."  Id. at 7.  With respect to the failure to move for severance claim, the Appellate Division noted that Petitioner may have "benefitted from a joint trial."  Id.  Additionally, as noted above, the Appellate Division praised trial counsel's representation of the petitioner.

This Court agrees that Petitioner has not demonstrated that trial counsel was ineffective under the Strickland standard because trial counsel's actions were neither deficient nor prejudicial.  The Appellate Division's characterization of trial counsel's actions as "strategically defensible" is simply not unreasonable.   Therefore, Petitioner's claim of ineffective assistance of counsel would have likewise been denied if this Court were required to reach this issue.

### D.  Certificate of Appealability

Finally, this Court must determine whether a certificate of appealability should issue.  This Court may issue a certificate of appealability only if the applicant "has made a substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal court dismisses a habeas petition on procedural grounds without reaching the underlying constitutional claims, the petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to

invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted." Id.

As explained above, this Court has concluded that Petitioner's application is time-barred, and that neither the statutory tolling provision nor the doctrine of equitable tolling renders the petition timely.  This Court is persuaded that a reasonable jurist would not debate the correctness of these conclusions.  Therefore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability will issue, pursuant to 28 U.S.C. § 2253(c).

**CONCLUSION**

For the foregoing reasons, this Court denies the petition for habeas corpus relief, and declines to issue a certificate of appealability, pursuant to 28 U.S.C. § 2253(c).


 S/Joseph A. Greenaway, Jr.
 JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: August 9, 2006